The first case up this morning is Uphoff v. Grosskopf. For the client is Seth Uphoff. Am I pronouncing that correctly? Uphoff. Uphoff. Okay. And for the appellee is Esther Seitz. Am I pronouncing that correctly? Yes.  May it please the court, my name is Seth Uphoff, the Livingston County State's Attorney, here on behalf of the appellant. Good morning. Your honors, we're here today because in 2001, a young woman by the name of Heather Tomich was brutally murdered in a rest area just south of Pontiac in Livingston County. She was brutally beaten, kicked, stomped, and left to die in the bathroom at that rest area. Fortunately, her killer was quickly apprehended, prosecuted, pleaded guilty, and was sentenced. And during the sentencing hearing, certain evidence was presented to the judge, some including photographs. And the judge noted in sentencing the defendant at that time, the brutal and heinous nature of the offense. Noted the blood on the walls, the victim, the fact that she was nearly unrecognizable because of the beating that she had suffered. And because of the brutal and heinous nature of that murder, sentenced that defendant to life in prison. Nearly a decade later, an individual by the name of Matthew Groskopf filed a Freedom of Information Act request with the State's Attorney's Office in Livingston County, requesting all the documents in the State's Attorney's file as it related to that brutal murder. All documents? All the documentation that was in the possession of the State's Attorney, yes. And the State's Attorney at that time denied that. Did that, by the way, include the photographs you made reference to? There were photographs that were in our files, and the request was for everything that the State's Attorney had. Okay. And during subsequent... there was discussion about, does that include the photographs as well? For instance, did Mr. Groskopf continue to say, or did he say, I want the photographs too? I don't believe the attorneys for Mr. Groskopf have ever abandoned the request that they receive all the documents, and I believe they, last time we were in front of this court, said that that would include the photographs. Does that include the State's Attorney's work product, State's Attorney's notes, exchanges with both Assistant State's Attorneys? Well, that's not clear, Your Honor. At this point, I imagine it would, unless if we were found to be subject to the act, then I suppose we could start to try to utilize some of the exemptions, and some of the exemptions in the act may exclude some of those materials. But as it stands now... Is the Attorney General going to say that you waived that by not asserting... I don't believe we have. I don't believe we're subject to the act, so I don't believe it was incumbent upon us to try to utilize exemptions. If you're excluded from the act, you shouldn't have to try to utilize... But it's unclear. At this point, it is your understanding that Mr. Groskopf and his lawyers were seeking literally everything in the State's Attorney's funds. That's my understanding, yes. Okay, go ahead. That request was denied, based on the grounds, which you're aware of by now, that the State's Attorney doesn't believe they're subject to the Freedom of Information Act. And the reason being is the simple construction of the Constitution along with the Freedom of Information Act statute, or FOIA. And looking at the plain language of the Constitution and the plain language of the act, I think it becomes clear that State's Attorneys are not subject to the act. By the way, is my understanding correct that this FOIA request was made in February of 2010? I believe that's when it was, yes. Do you know whether there have been, in Livingston County, prior to that date, any FOIA requests to the State's Attorney? Specifically, I don't know, but anecdotally in speaking to attorneys who were in the office at that time, I believe there have been, and they were denied on the same grounds. Do you know of other State's Attorney's offices in the State of Illinois at or before February 2010, who similarly received FOIA requests? Yes. So there have been some? Yes. Okay, go ahead. Looking at the FOIA, it lists four public bodies. In defining public bodies who are subject to the act, it lists four categories. It's the executive, legislative, administrative, and adjudicatory. Excuse me, not adjudicatory. It lists four that advisory. And in listing those four, it excludes judicial. And the judicial branch as a whole is excluded, at least as interpreted by case law subsequent to that time. And it is a tenet of statutory construction that groups are specifically listed and one is omitted. Then by omission, it's intended that that group be excluded. And in this case, the FOIA excludes the judicial branch. Then when you look at the Constitution, the State's Attorney's Office is founded in the judicial article. It's founded under the judicial branch. Since its inclusion in the Constitution, that's where it's been located, is in the judicial article. It's never moved. It's always been there once it's been placed there. And since that time, the Constitution has been revised. There have been multiple constitutions that have been enacted. And there have been revisions to the specific section regarding states' attorneys. Substantive changes have been made where they allow states' attorneys to represent more than one county. And that was in 1970 that that substantive change was made to that section. And yet, even at that time, there was never an attempt made to move the states' attorney out from underneath the judicial branch into the executive. Something that certainly could have been done and was not. So I believe the Constitution makes it clear that states' attorneys are founded in the judicial branch, and are thus part of that branch, and are excluded from FOIA. Now, I know the appellee's position is that, well, it's just sort of an anomaly that states' attorneys are under the judicial article. We really shouldn't take that into consideration where they're placed in the Constitution. Instead, we should apply this functional test as is laid out in the Copley Press case. And in looking at that functional test, there are several issues, first of all, that I think weigh against using the functional test. And first and foremost, again, is going back to the plain meaning and the plain language of the Constitution and the FOIA when read together. It makes it clear the judicial is excluded and we're founded there. But going beyond that, there may be a time where you would need a functional test if you have a non-constitutionally designated office or entity. States' attorneys are not that. They're constitutionally designated. In Copley Press, they were dealing with a pretrial services agency. They're not constitutionally designated. The court in that case was trying to find a solution to determine where they should fall in terms of what branch they answer to and how they should be considered. So it was pragmatic at that time for the court to formulate some sort of a test to use. But I would argue that it was a bit of a one-off. It was fact-specific. It was applied only to those factual circumstances. And in a case such as this, when you have a constitutionally designated entity, such as a states' attorney's office, you don't need that functional test. Well, the states' attorney's office doesn't look much like what judges do, does it? Well, it depends on how you look at it, Your Honor. I think there can be ways where we're not the same. Obviously, we're not arguing we're judges. We're not arguing that we have all the same powers and duties. But there are similarities. Aside from being both founded in the same article in the Constitution, both entities perform some administrative and executive functions as well as some judicial or quasi-judicial functions. For example, the courts have administrative duties that they have to carry out. There's an administrative office of the courts here in Illinois that they're entirely administrative. Yet they would probably be considered part of the judicial branch. They're mentioned in the Constitution, but if you look at their function, their function is purely administrative. When you look at states' attorneys, we have some quasi-judicial functions, particularly with the election board. If there's a dispute as to a candidate who can be on a ballot or other disputes regarding those types of issues, the states' attorney sits on a board and hears evidence and makes a determination. That would be a quasi-judicial function that is carried out by the states' attorney's office. In addition to that, when you look at how each of the parties, referring to judges and states' attorneys, are treated in terms of immunity in their official capacity, each is given absolute immunity when operating in their official capacity. And I think that's because it was determined that it's necessary to help provide independence both to states' attorneys and to judges. That we should be able to operate within our discretion that we're granted without risk of being browbeaten by individuals who are trying to control or invade that province of discretion that we have. And so we're given absolute immunity to make certain determinations. And so I think there's some similarities in that. And lastly, I would also point out that judges and states' attorneys, I believe, are unique amongst lawyers in that we're both required, first and foremost, to provide for integrity and fairness in the judicial system. States' attorneys and judges, it's incumbent upon both of us to be looking out, as states' attorneys, not just for the rights of the victim and the position of the state, but we also are bound to look out for the rights of the defendant. We're not allowed to ignore the rights of the defendant. We have to ensure a fair trial for that individual. And the courts are the same ilk. We have to provide for a fair system and protect the integrity of the system. Those are similarities, I guess, between judges and states' attorneys. So while we're not the same, we're not as far apart as some would like to make it seem. And I think our position is now firmly supported by the Nelson decision. As I'm sure this Court is aware, in Kendall County and in the 2nd District of Illinois, there was a case, which is, as my law professor stated, on all fours with this case. It's directly on point. It deals with states' attorneys. It deals with FOIA. It's not a pretrial services agency. It's not the clerks. It's states' attorneys. And it's the FOIA. And the decision was handed down. Obviously, very recently. And in looking at that, I think the Court, in that decision, mirrored a lot of the arguments that have been made in front of this Court. That we have to look at the Constitution first and foremost. That it's the Constitution that doesn't change. It's the statute that is interpreted to be in keeping with the Constitution. The appellee would ask this Court to reinterpret the constitutional structure so as to be in keeping with the FOIA. It should be the FOIA that is interpreted to be in keeping with the constitutional structure. Additionally, in... The Supreme Court of Illinois, a month ago, took the Nelson case. Did it not? It did. On a PLA. It did. Why should we be deciding this case now, as opposed to awaiting the Supreme Court's decision? Well, that's your prerogative. I suppose you can wait for that decision if you'd like. But I think this Court has an opportunity to affirm what I believe has been the proper decision all along. Which is that state's attorneys are not subject. And send additional support. Of course, you're the appellant here. That's correct. That's because Judge Pacey ruled against you at the trial level? That's right. Is there any urgency here? Is anything happening pending this appeal and pending the Nelson case resolution by the Supreme Court? There's no urgency on behalf of the state's attorney's office. That is, you're not complying with this request pending this Court telling you you're going to have to. Correct. I believe the appellate will have a different position. I believe this is urgent. And we would ask for this Court to make a ruling. Whether it's for us or against us, I think it's still incumbent upon all of us to do our part and have our role and let the Supreme Court consider all of those factors. If the Supreme Court wants to consider the fact that two appellate courts have ruled in the same direction or wants to consider the fact that there's been a split, that's for them to consider. But we would ask you to make a decision in this case, I guess. Obviously, we're asking you to make it on our behalf. Counsel, what do you make of the legislative history where Representative Hawkinson and Representative Curry were talking or debating about the bill? It seemed pretty clear that Representative Curry, in responding to Representative Hawkinson, indicated that the act did apply to the office of state's attorney. There's a couple things I would say about that. I don't have the transcript in front of me here, but I have reviewed it. And the first thing I would point out is that the question stated after the investigation is done and the materials are sent to the prosecutors, it doesn't specifically state state's attorneys. And I know that splitting hairs were attorneys, and I guess that's what we do. There's multiple types of prosecutors here in Illinois. There's the Attorney General's Office, which has prosecutors. There's state's attorneys. And then there's municipal prosecutors. And state's attorneys are unique among that group. We're unique in that we're elected. We're unique in that we don't answer to the Attorney General. And we're unique in that municipal prosecutors are allowed or oftentimes aren't able to charge the same types of cases that we are. And because we're unique, he just said prosecutors in general. I don't think that specifically shows an intent to pin down state's attorneys. Do you think it's improper to look at legislative history? For us to do so, we would have to find an ambiguity. Is there an ambiguity here? That was my next point, and maybe it should have been my first point. No, no, no, that's fine. Maybe that should have been my first point, which is that it's clear here. We have clear language. We have clear language both in the statute, and we have clear language in the Constitution based on its structure. So why go beyond? Why go to other materials to try to determine intent when they could have drafted it to make it clear? I mean, really, just because it's maybe one representative did intend for this to happen, but if you look at Representative Hawkinson's response afterwards, going on to the next couple of answers, he makes it clear that he's not in support of this, that this wasn't how it was supposed to come out of committee, and that he was encouraging others to vote against it. So at least there's one other individual who was involved in that conversation who did not agree that states' attorneys should be subject to the Act. So I don't think we need to go to the legislative history because the legislative branch had the opportunity to write a clear statute. They wrote the statute they did, and until that's changed... Well, how about if a reporter wants to see matters of the budget? What's that? What if a reporter made a request for budgetary documentation in your office? Well, for states' attorneys, that goes through the county, and so it would be available through the county. So if it's available through another source, the request can't be made to the states' attorney's office? We don't believe it should, no. Not for that reason, but because we're not subject to the Act. The attorney general is subject to the Act? Correct. Okay, what differentiates the office of states' attorney from the attorney general? Well, there's a lot of differences, but the biggest factor in this case is that the attorney general is founded in the executive article. They're named as an executive officer in the state, and so it's very clear from the statute that when it said executive bodies, that's an executive body. When you want to break it down more into the duties, states' attorneys can be in a grand jury and have general subject matter jurisdiction within their county, can charge all sorts of cases. What's okay in the attorney general? The attorney general can only do it in limited circumstances in terms of convening a grand jury. It has to be a statewide grand jury. It has to be offenses that occur across county lines. They can't just come into any particular county and snag a case and say, that's going to be ours. They can also stop us from charging a case if we want to charge it or prosecute it. The attorney general can't step in and tell the states' attorney, no, you can't do that. So we're separated apart in that regard. As I stated, the primary difference is placement in the Constitution. The plain meaning and structure of the Constitution makes it clear they're an executive officer and we're not in terms of how the Constitution is constructed. I think there's public policy that also weighs in favor of making states' attorneys exempt from FOIA. I know some of this was recited last time, but as was pointed out by Justice Steigman, there's prisoners all across this state who have nothing but time on their hands and who would love nothing more than to get their hands on a lot of these materials. When you start talking about some of the types of materials they can get their hands on, we're talking about murder cases, sexual assault cases, child abuse cases. You could even go into animal cruelty cases. When you talk about some of the content of these, it's very dark content, I guess, and could be used for very dark purposes. When you have hate crimes, for example, these individuals could FOIA all the information about particular hate crimes and take that information and spread it and use it to create more hate against the type of victims. These victims have already gone through enough. They don't have to be and shouldn't be re-victimized by having the state's attorney, who is supposed to be protecting them and looking out for them, being the one required to turn over the information. I know they'll say, well, there's privacy exemptions that the state's attorney can claim and things will be redacted, but that's oftentimes not enough. What about the instances where there is no individual who can step up, where Heather Tomich can't come in and say, I want my privacy interest? What if Heather Tomich's family wasn't available to come in just because her family isn't there to claim her interest? Does that mean that she should be drugged back out of the files and plastered on the Internet by Mr. Groskopf for all to see? I don't believe so. And for that reason, in addition to the compelling reasons regarding the Constitution and plain meaning of the statute of FOIA, we'd ask this Court to find that state's attorneys do not fit as a public body and thus are not subject. Thank you. Thank you, Counsel. Ms. Seitz. May it please the Court, my name is Esther Seitz and I represent the requester, Matthew Groskopf. This Court should affirm the Supreme Court, which held a ruling on one simple issue, and that is whether or not Illinois' state's attorneys are subject to the FOIA. The answer is yes. The state's attorney here seeks a very broad ruling from this Court, one that categorically exempts state's attorneys from the Freedom of Information Act. The question here is not whether or not all the records that are housed within the state's attorney's office are releasable under the FOIA. They certainly aren't. They are not? No, because there would be exemptions that apply. Justice Turner talked about the work product exemption. There's an exemption for that under Section 7-1 of the Freedom of Information Act. But the request here was for all documents. That's right. The request was for all documents, but that doesn't mean that we have a right to all of those. So to the extent that an exemption is raised and an exemption applies, those records would properly be withheld under the FOIA, and we would get the remainder. And Section 7-1 of the FOIA makes very clear that when an exemption applies to a record or to a set of records, or even to a portion of a record, then it's the public's body's duty, if they so choose, to redact the portions that are redactable. So if we were to rule in your favor, you're not going to subsequently argue that they waived those exemptions? We would argue that in this case, because they did. You would argue that? We would argue that. So you want all the documents in the state's attorney's office, then, should you prevail today? In this case, the place where we are in this case, now, yes, we would, because the exemptions have been waived. The Freedom of Information Act... Forfeited, counsel. They have been forfeited. Waiver is the intentional relinquishment of a known right. Forfeiture is a procedural default. I think I let her into this. Thank you. They forfeited their right, because Section 9 of the Freedom of Information Act makes clear that if a public body seeks to invoke an exemption, it has to do so within its initial response time. That's five days. And here, that deadline has long passed. Counsel, let me talk about the case that has been cited primarily in support of the state's attorney's position, the Nelson case. You're very familiar with that? I am familiar with that. And how the Second District deemed the state's attorney's office to be a judicial body, primarily looking to how that term is broad, looking to the State's Attorney's Appellate Prosecutors Act. Are you familiar with that act? I am. Okay. Let me change the circumstances slightly here. Instead of a FOIA request to the state's attorney of Livingston County, it's a FOIA request to the State's Attorney Appellate Prosecutor. We want all your stuff in a given case, let's say. That they're prosecuting, they have a bunch of trial prosecutors now, and they're involved in a bunch of cases and have been for a while. Are they exempt? The State's Appellate Prosecutors Act obviously does describe them as a judicial agency. I would say that they are nevertheless a part of the executive branch of government because that's the reality of their functions, just as an advocate and as a prosecutor. Thus, as a member of the executive. However, I do think that the issue that you just phrased is a little bit more difficult than the state's attorneys. Because I'm not quite sure about to what extent the State Appellate Prosecutors Office also exercises judicial functions. Let's assume they don't. I frankly don't understand what judicial functions they'd be exercising. They are the state's attorney's prosecutors at the appellate level, generally speaking, and at the trial level in certain cases where the local state's attorney is a conflict or whatever. So they perform no judicial functions, I'm aware. So you want all their stuff in the case of People v. Berfel that they handled at the trial level in Sigmund County. They would have to, yes. Do they have to come up? Are they exempt? They could invoke any exemptions, but they wouldn't. Their exemption is, hey, we're not covered by FOIA. Are they right? It would be our position that they are subject to the freedom of inquiry. Because what? Because of the functions that they perform. So we can't take the legislature at its word when they described it as a judicial agency of state government? We cannot. In the first sentence of Section 3? We cannot. And the reason for that is because when the legislature enacted the State Appellate Prosecutors Act, that was in 2010. No, it wasn't. When it used that term for the first time. Oh, yes, that is correct. But the act itself was, what, 20 years ago? In 2010, so three years ago. Yes, but that was when they amended the preexisting act to include the word judicial. They changed the first sentence, the primary amendment in 2010, it's interesting you mention 2010, was to change the first sentence, and this was in Public Act 96-900, Senate Bill 3372. The first sentence read, there is created the office of the State's Attorney Appellate Prosecutor as an agency of state government. That bill changed it to read, there is created the office of the State's Attorney Appellate Prosecutor as a judicial agency of state government. Now, there are a few other provisions in that bill that amount to a bunch of nothing. And filling vacancies and how, whether they could have hired investigators and that. But the primary purpose of the bill in 2010 was to add the designation a judicial agency of state government regarding the State's Attorney Appellate Prosecutor's Office. Why would they have done that in 2010? They would have done that in order to signal that the State's Attorney Appellate Prosecutor's Office is part of the state government and not part of county government and that they are appearing before the judiciary. Well, the problem is it said an agency of state government. There was no reference to county government earlier. There would be no claim that this is a county organization. So they changed the term state government to a judicial agency of state government. Why would they have done that? Because they are appearing before the judiciary. I don't think it has any bearing on FOIA. Well, now, it's interesting you would say that because you remember my first question to Mr. Uphoff was, when was this FOIA request made? This FOIA request was made in 2010. When was the FOIA request made in Kendall County's case? Much later. No, 2010 was the first time. According, I have the case in front of me, and it talks about 10-MR-143 in Kendall County. That means in 2010 was the first time that this matter was litigated in Kendall County. You're telling me, Ms. Seitz, it's totally coincidental that as these cases begin to percolate out, asking for prosecutors' notes and materials for the first time, the legislature chooses to address the State's Attorney Appellate Prosecutors Act by changing the word state government to a judicial agency of state government? I do not think that that signals a legislative intent to make the State's Attorney as part of the judicial branch because if that would have been the intent, the General Assembly only recently, also in 2010, revised the Freedom of Information Act itself. Well, you don't have to revise it if there's already an exemption provided for judicial bodies. Isn't that right? When they amended the act, they didn't have to say, by the way, the Circuit Court of Salem County isn't included because judicial bodies are by definition not included. Isn't that correct? No, there was an existing body of case law which treated State's Attorney's appellate cases from decades back saying that the, adjudicating essentially the exemptions. Therefore, the State's Attorneys in those cases admitted that they were subject to the FOIA. And if the General Assembly had a problem with that, as you're suggesting, they would have had plenty of opportunity to make that correction when they did a significant overhaul of FOIA. Actually, the first major overhaul of the FOIA happened in 2010. And if they had a problem with State's Attorneys being subject to the FOIA, then they could have said so in defining public liability. Well, I want to go back to my question. A primary rule of statutory construction is to look to give meaning to all legislative action and to changes in the legislature and to all the words that appear in statute. As opposed to the bogus notion about legislative intent based upon musings by legislators on the floor of the General Assembly, the thing about bills is we actually have a written bill here. So when someone votes on it, they can say, oh, look at this. We're changing an agency of state government to a judicial agency of state government. So my question is, if the purpose wasn't to exempt SAP from FOIA, what was the purpose? Even if the SAP is exempt, that's not the issue here. No, no, no. It would be very limited. Council, that's not my question. If you're claiming that wasn't the purpose, tell me what was the purpose? The purpose was to signal that the SAP is performing functions in front of the judiciary and that they have interests where they're protecting, well, not just maybe the State's Attorneys, but also that their interests are a little bit broader. Maybe, and the SAP Act goes into this, that they are supposed to educate State's Attorneys. So their interest is not just to act as an advocate, but it's actually broader than that, broader than the functions of the State's Attorneys themselves. I don't understand what you mean. Broader in what way? How does this change? How did the adding the term judicial agency change in any way what SAP does at the appellate level?  They're educating attorneys. They're putting on seminars for State's Attorney's offices. But what's also, since you're talking about other statutes that the General Assembly hasn't acted, there are plenty of other statutes, and those are cited in our briefs, that make very clear that the General Assembly does not think of the State's Attorney's office as a member of the judiciary. It lists judicial officers. It will list State's Attorneys. And if the General Assembly thought that they were one and the same thing, they certainly would not differentiate. Well, here's, and I don't want to beat around the bush here, but here's where this is all leading to. The fundamental import of the second district decision, which was written by Justice Zeno, is that we don't have to say that the prosecutors are part of the judiciary, but for purposes of the FOIA, the fundamental point is that the act doesn't apply to judicial bodies, and that's a broad enough term to include prosecutors whose offices appear under the judicial article of the Constitution. And to cite the broadness of the term, she looks to the legislature, and this is construing legislative intent, to what the legislature did with regard to SAP, and saying that here's an example of how SAP is a judicial agency of state government, even though in no sense does SAP perform judicial duties as commonly expressed. Yet they have said that SAP is a judicial agency of state government, and it seems to me that there is no good reason, and frankly you haven't yet provided me with one, for their doing this in 2010 other than in response to the very litigation that is now before us, and other than to make clear that SAP is not going to be subject to FOIA. Now you'd say, well, why not the state's attorneys, and of course for two possible reasons. One, it's harder to do that to get other legislation through, but secondly, the state's attorneys are already under the judicial article of the Constitution. SAP exists only as a creature of legislation, and they need this, or they would be subject to FOIA for the reasons you just argued. What's the matter with that analysis? The problem with that analysis is simply that if the legislature wanted to all of a sudden exclude the state's attorneys from the umbrella, or from the umbrella bodies that are subject to the FOIA, then it could have done that when it overhauled the act in 2010. It didn't need to do it in such an awkward way where it wasn't even talking about the FOIA in the FOIA, it wasn't talking about the state's attorneys in the county's code, it was talking about the SAP in the SAP Act. Here's again, my point is, if the FOIA already contains exemptions for judicial bodies, then we don't have to change the FOIA Act if we want to broaden what's a judicial body to come within the exemption. All you have to do is, for instance, make SAP a judicial agency. Now it's covered, that's good, no more FOIA if that's your intent. And you could say the same thing as Justice Zinoff did for the second district. And by the way, a judicial body is not a term saying you're part of the judiciary. A judicial body for purposes of FOIA means you have some connection to the judiciary sufficiently so that you're not going to be covered anymore. You're going to be exempt from FOIA. But the issue here is essentially the interpretation of the term public body, as that term appears in Section 2 of the FOIA. And the SAP Act didn't even use public body, it didn't talk about the FOIA, it didn't even use the term judicial body, it used the term judicial agency, and not even the connection. So let's move away from the legislation for a second. The state's attorney has been placed in the judicial article of the Constitution in 1818, 1848, 1870, and 1970. And your argument is that was just mere happenstance? No, it wasn't. It just kind of occurred that way coincidentally? Absolutely not. In placing the state's attorney's office in the judicial article, the delegates meant to signal that state's attorneys are a member of state rather than county government. And they are paid out of the state budget, not the county budget. That is why the state's attorney's office is placed there. In the Ingevinson case, the Supreme Court case that's cited in the brief, that confirms that by citing to the record of proceeding. And I think it's during the Constitutional Convention, I think the one in 1970. What's also really important is to look at what does the Constitution actually say? It doesn't say anything about public records. It says nothing about FOIA. It talks about four things. That make up Article 19, the so-called state's attorney provision of the judicial article. And it talks about the fact that state's attorneys are elected for four-year terms, that they can serve more than two counties under certain circumstances, that a state's attorney has to be an attorney licensed in Illinois and has to be a U.S. citizen, and that the salary shall be provided by law. Those are the only things that are discussed. So the argument that state's attorneys are judicial bodies for purposes of FOIA simply elevates form over substance. They're relying merely on the placement of the state's attorneys in the judicial article. But when you actually look at the substance of what that provision says, it says nothing about this case. I want to ask you about what you have in your brief on this legislative discussion between Representative Hawkins and Curry. We have in this panel a distinguished former member of the Illinois House of Representatives. Thank you very much. He wasn't in the House in 1983 when FOIA was enacted, but I want to make sure I understand the dynamic correctly. You show a question asked by Representative Carl Hawkins and Representative Barbara Curry, and she answers, yes, I think under these provisions the answer would be yes, it should be disclosed in the prosecutor's files. Assuming my distinguished colleague had been sitting in the Illinois House of Representatives at that time and he heard this discussion and was paying attention carefully, as I'm sure he would have, was he under an obligation if he disagreed with Representative Curry to get up and say, excuse me, Mr. Speaker, but Representative Curry's response isn't my response and it should be understood that that's not necessarily the sense of the House. Is he under that obligation, or if he fails to do so, does Representative Curry's remarks become the law, what the House is saying? We're not saying that those are the law. Those are just legislative history and legislative debates, as you all know. What is it worth is my question. Is he under an obligation to speak up or, 30 years later, having a sharp lawyer come and argue, hey, look at what they said, that's what it means. Certainly one legislator's intent is not determinative, but after this discussion, look, hey, law debates reveal, you say. Bill passed. Bill passed. Yes. And that's what matters. What about, by the way, the people in the Senate? Should they have known what Curry answered in the question to Hawkinson? So they'd say, hey, we'd better say something about this because otherwise it's going to be argued this was a legislative intent because of what was said on the floor of the House. They certainly should have been informed about or should have informed themselves about Is that how things work, you think, at the Illinois General Assembly? I'm not sure. That they should share back and forth the commentary? It would make sense for the legislators to inform themselves of what has happened in the other chamber. But we don't need to go to legislative debates. That is only one part of our argument. Well, just for the record, I should disclose I had many arguments with Barbara Flynn Curry when I was in the House. We'll have an opportunity to address this again in rebuttal. No, actually you won't. I misspoke. Mr. Uphoff is the appellant. You'll have an opportunity to address this in rebuttal. Just briefly to address a couple of points. One, I guess, is how they started and kind of how it finished, which is she was saying, you know, there was a broad ruling from the Nelson Court and it made this broad. Well, the legislature, if they wanted to narrow this, certainly could have done it by saying what they meant. If they meant for state's attorneys to be included, then say it. Say what you mean and mean what you say. And when you're at the legislature, that comes down to how you write the legislation. And in this case, the way they wrote the legislation was in such a way as to omit the entire judicial branch. The state's attorneys are in that branch and therefore we believe should be omitted as well. And looking at exemptions versus exclusions, because we're omitted, I would argue we're excluded from the act. So when they refer to exemptions, well, they should have asserted this exemption or that would fall under this exemption. Exemptions only apply if you are covered by the act. And if you're not, you shouldn't have to put forth exemptions. By putting forth exemptions, you're admitting that you're subject to the act. So state's attorney's offices are not going to put forward exemptions because we don't believe we're subject to the act. Well, that's an argument to be made if you lose. Correct, it is. You haven't lost yet, counsel. I know. Are you asking this court to make a very narrow ruling like the Nelson Court? Absolutely. Or are you asking this to go beyond that? Oh, absolutely. I think it needs to be a very narrow ruling. Well, what does it mean? What is it you're requesting? Because it's a reasonable request to make.  What is the most narrow grounds to rule on? The most narrow grounds possible is what the Nelson Court did, which is just say, looking at the structure of the Constitution and the language of the statute, the legislature did not express a clear intent to include you. What they did express was an intent to exclude the judicial. You were in the judicial. So you don't fit under the definition of public bodies. We don't have to call you judicial officers, as Judge Pacey thought we were trying to argue at the lower court. We don't have to call you judges. We don't have to call you judicial members, non-judicial members. All we have to determine is are you part of the public body definition or are you not? Well, the narrow ruling would be state's attorneys are exempted. That would be a narrow enough ruling and one that we would appreciate. In talking about exemptions, what we wanted to address is, again, a public policy argument, but one that I think bears on the argument that keeps being made by the appellee, and that is there are certain things that aren't going to fit under the exemptions, at least not as they're currently written, and one of those would be a defendant's confession. If a defendant, as they oftentimes do, want to boldly recite all of the things they did to their victim, does the victim then get to come in and claim a privacy interest to that? I don't know, and I don't think they would. It's the defendant's words, and it's his actions that are being, it's a document that's in our possession that doesn't directly relate to the victim in the case, and so it's something that could get out. So to continue to try to say, well, exemptions will cover this, exemptions will cover this, I don't believe they would, at least not as they're currently written. And just the last thing I would say is to make the comment that this is form over substance, I think is insulting to the Constitution of the State of Illinois. It was written and framed with an intent, and I believe that intent should be upheld, and that intent was for us to be founded in the judicial article. And as such, we should not be subject to FOIA. Thank you. Thank you, Counsel. I'll take this matter and advise it to be in recess for a few minutes.